Oh, yes. Oh, yes. Oh, yes. The Honorable Duff Court, Fifth District, State of Illinois, is now in session. Please be seated. Good morning. First case on today's docket is the case in the matter of the Estate of Elizabeth Davinroy. We have Mr. Thompson for the appellant, and we have Matthew Jacober and Scott Mallon for the appellee. And do you both intend to argue? OK, fine. Mr. Thompson, we may proceed. Good morning. Good morning. May it please the Court, my name is Rich Thompson, and I represent the appellant, Al Davinroy. We're here because the trial court did two things. There were two petitions filed by Al before him. One petition for relief from judgment. Motion to dismiss was filed against us, and the trial court granted that motion to dismiss. So I think that subject to de novo review and all the allegations in our petition should be taken as true. The second petition Al filed was a petition to reform settlement agreement. The trial court's order stated motion for relief to file petition to reform settlement agreement is denied. I'll explain more on that later. I thought of that as a petition for declaratory judgment, not an amended complaint. I didn't file a motion for relief, which the trial court denied even though it was never filed. I'll explain that more later. A few background facts are necessary, as I'm sure you're aware. Al's mother died in 2015. She died leaving a will and a trust. In February, a probate estate was opened by her daughters. Al was not given notice of the probate initially, even though he was the son of the decedent. When Al filed pleadings in the estate and tried to participate, the estate argued that he was barred from doing so because in 2009 he had allegedly agreed to waive all of his claims against his mother's estate. The estate based that argument on proceedings that occurred in 2009 regarding the estate of Al's father and his mother individually. Before you go any further, I have a big question regarding jurisdiction in this manner. How is it that the court had jurisdiction? The trial court. The trial court. It appears to me that there was a settlement in 2009. Correct. Petition to enforce the settlement. Correct. And a court order regarding that. Correct. Which was not appealed. Correct. This argument was raised in the estate. Yes. By the estate. Yes. As the basis for barring Al's participation in the estate. So I thought that fact that it was raised by the estate brought it before the court and raised the issue of whether or not what the estate alleged was true. Did he waive his rights in 2009? Was that part of a legally binding agreement? Was the enforcement by the trial court proper? Or was it done on the basis of fraudulent representations made to it? In which case, that order could be set aside at any time. And therefore, that matter was properly brought into the estate. So you're saying that essentially you retained, the court retained jurisdiction because you're alleging fraud? Correct. Now you're aware of the more recent cases, Castleberry being one of them. And there's a number of recent cases that say jurisdiction is solely a matter of subject and personal. Right. But a court order that is being attacked on the basis of fraud, that issue could be raised, I think, at any time. And I cite cases for that in my brief. Any new cases? Subsequent to the rulings clarifying the difference between the jurisdiction aspects of void orders? I thought, I'm not exactly sure what, I don't recall the names of the cases, but I thought I had addressed that maybe in the reply brief. Because the estate might have mentioned this. I know they brought up something about the voidness of the orders in the basis for attacking those. And I responded to that. Okay, go ahead. When Al tried to participate in the estate, they said, no, you can't because of what happened in 2009. In 2009, Al had sued his father's estate and his mother individually. There were only two parties, Dad's estate and Mom. A mediation was held under Judge Ratcliffe. At the conclusion of the mediation, the following terms were written down. They're very brief. I'll read them. As full and final settlement of all claims brought in these matters are previously occurring, not brought in these matters, Elizabeth Dabneroy shall pay to Albert Dabneroy, Jr. the amount of $22,000. And then the next paragraph is basically that the attorneys for Elizabeth Dabneroy shall prepare the settlement documents, outline the payments agreed to, and all other terms. They typed it up. The original agreement was handwritten. This agreement explicitly refers only to the claims brought in these matters, Dad's estate, Mom individually. There's no mention of the mother's estate. There's no mention of Al waiving any claims to the mother's estate. And I'd like to pause here to see if there were any questions about that point because that's the linchpin of my argument, that this 2009 agreement, as written down, nowhere mentions Mom's estate. Excuse me. Was your client represented at that point? No. So was it raised before the court? Well, if I may, I'll get to the hearing and address that. On the petition to enforce. Yes. Was it raised? Yeah. Okay. That is how I ratify. Sure. Certainly. Thanks. So in 2009, you have this agreement about Dad's estate and Mom individually. Neither of the parties signed the agreement, neither Al nor Mom, which I think is significant because I cited the 2004 rule, which says a mediation document must be signed by the parties in order to be legally binding. So even though Al was in dispute that he agreed to settle up with Dad and Mom individually, this agreement was never a legally binding agreement. So when it was taken to the trial court for enforcement, there was no legally binding agreement to be enforced. So that's the first point. It was not signed. When it was formalized and typed up, new terms appeared that were not in the original agreement. Namely, the typed version has a couple paragraphs which say Al also agrees to waive his claims against his mother's estate. That was never part of the original mediation settlement terms, and Al never agreed to that. Al refused to sign the typed version because he never agreed to waive claims against Mom's estate. And in the trial court, in this case, Judge Ratcliffe filed a sworn affidavit in which he stated that it was his practice that whatever was agreed to in the mediation went into the handwritten document. And if it was in the document, it was agreed to. If it wasn't in the document, it wasn't. So I think we can conclude from that that Al's mother's estate was never part of the 2009 proceeding. It's nowhere in that document. Mom's lawyers took this typed version to court to be enforced. At the hearing, Mom's lawyers represented to the court that a binding settlement had been reached. As I said, I think that's false because it was never signed by the parties. Al wasn't represented, and Judge Locono asked Al at the hearing if he had taken any money as part of the settlement. And Al said, yes, he took $22,000. And now I'm quoting. The court said, OK, I'm going to enforce the settlement. That's the way it's going to be. If you agree to the number, I'm going to enforce the settlement. Transcript page 7. The issue that the typed version of the agreement had terms about Mom's estate that were never part of the original agreement, that never came out at the hearing to enforce. On the contrary, Mom's lawyers argued that everything had been agreed on, and they were merely enforcing now with the typed document that they presented to the court, merely enforcing what had been agreed to back at the mediation in the handwritten document. And I think that clearly is not the case when you see that the estate of Mom is nowhere in that handwritten agreement. And I agree. There appears to have been a lot of irregularities. Thank you. However, that happened in 2009. Right. And unfortunately, your client decided to represent himself. Right. None of this was raised. There was a final judgment. You had 30 days to appeal or two years to file a 2-1401. Right. Nine of those things occurred. Right. And we're in the situation today with the state of the law being very clarified that jurisdiction is by virtue of subject matter and personal service. Right. And both of those things occurred. So we don't have a void judgment. Even on the basis of fraud. Even on the basis of fraud. Right. I will have a second argument that I think will be another basis on which I can be successful here with the petition to reform settlement agreement, which I think avoids the jurisdictional issue. Okay. So that will come up, if I may. Yes, you may. Okay, thank you. Sure. We're back on the chalkboard. They're trying to enforce the typed version. Mr. Jacober says, and I quote, the agreement provided reflected the terms of the settlement. I think that was a false statement on its face. Mr. Jacober represented the court that what changed here was Al. He said Al changed his mind. He said he would sign it then, and now he says he won't. But the truth is that what changed were the terms. He agreed to one thing, and they're trying to enforce something else. Namely, waive their claims against Mom's estate that might arise in the future. So this is all involved in my petition for relief from judgment, which the trial court dismissed. We asked the trial court to set aside disorder based on fraud. We think the trial court erred in dismissing it. We think the cause, the petition stated the cause of action and should have been allowed to proceed. So now it's the second petition. This is a different argument. The second petition, petition for relief from judgment. And this one is one the trial court ruled motion for relief to file petition for relief from judgment is denied. As I said, I never filed a motion for leave to file that petition because in my mind it was not an amendment complaint. I didn't think of it. I thought of it as a petition for declaratory judgment. If you look at the prayer, it asks for a declaration. And as a petition for relief, excuse me, petition to reform settlement agreement, I was arguing under the theory of modification of a contract. It's basically a contract, a reformation of agreement so that when you have an agreement that doesn't reflect what the parties actually agreed on, you can reform it so that it does reflect what the parties actually agreed on. There's a 10-year statute of limitations for that. This happened in 2009. I was within the 10 years, so I think I'm within the 10-year statute on that cause of action. So I don't think there's a jurisdictional issue as to that theory. I think based on the same facts I've already presented to the court, that type of agreement did not reflect what the parties actually agreed to in 2009, and it should be reformed to reflect what they actually agreed on in 2009. It's enforced by the court, fine, but then what the court has enforced is what they actually agreed on, which I think is the proper and just result. That's basically my story. You'll have the opportunity for rebuttal here, Mr. Thompson. Thank you for your argument. Thank you. Mr. Jacober. Thank you, Your Honor. Good morning. May I speak to you on behalf of the estate of Elizabeth Davenport? My partner, Scott Malin, is here with me as well this morning. May it please the Court. Yes. I know courts of appeal would much rather focus on the law than the facts of a case, but I think it's important to go back and clarify and correct some things that have been said about the proceedings in 2009 to give this complete context. First of all, at the hearing before Judge Lopino in November, on November 5th of 2009, Mr. Davenport was, in fact, represented by counsel. Counsel was Charlie Stegmaier. Now, there was a pending motion to have him withdraw, but at the time that the hearing proceeded forward with the motion to enforce the settlement, Mr. Stegmaier remained counsel of record, and he was at the hearing. And, in fact, when you look at the transcript, he actually spoke at the hearing. And the entire argument on this first point by Mr. Davenport hinges on what he says are a number of misrepresentations made by me to Judge Lopino in 2009 in the proceeding leading up to the motion to enforce the settlement. The only problem is when you look at the actual record from 2009, everything Mr. Davenport says I either misrepresented or either affirmatively misrepresented or misrepresented by some actable admission are actually in the record. Case in point, he says that I didn't provide a letter from Mr. Stegmaier to myself regarding the settlement. It's an exhibit to the motion to enforce the settlement. He says I didn't inform the court of what happened in mediation. The mediation agreement is an exhibit to the motion to enforce the settlement. But there isn't really much in that handwritten mediation agreement. There's a lot in the typed one, and they're both unsigned by Mr. Davenport. In action, Mr. Stegmaier addressed that both in his letter and, well, maybe not in his letter, but he did address that for sure at the hearing before Judge Lopino. He told Judge Lopino on the record, and he was an attorney who's been in Illinois, that he represented Al at the mediation with Judge Ratcliffe, and that he had authority to sign the mediation agreement on behalf of his client at that mediation. Mr. Davenport was in the room. His appearance is reflected on the record. In fact, he talked to Judge Lopino at the hearing, and Mr. Davenport didn't say a word about that. About? We're talking about the initial recording, the handwritten agreement. Correct, Judge. You're only talking about? I'm sorry. But then with respect to the motion to enforce, was Mr. Steiger, you say, represented him? There as well? During the motion for settlement, there was a motion for legal withdrawal pending, but that had not been called up. It had not been granted. He was still counsel of record, and he was at the hearing. And he didn't testify at the hearing regarding anything having to do with the settlement, the mediation settlement, did he? Judge, there was no testimony. It was an argument hearing, not a testimonial hearing. Did they take testimony from Mr. Davenport? Mr. Davenport, again, same thing. He spoke to the court. He was never under oath. He was never under oath. No one was under oath at the hearing. But nobody signed this rather lengthy agreement that was presented to the court in the motion to enforce. Well, I think the law on that point, and it's in our motion to enforce the settlement, is with the granting of the motion by Judge Lopinoff, it was, in effect, signed by Mr. Davenport as a matter of law, that the court's granting our motion to enforce. Well, I understand that. But what I'm saying is that clearly those are not the same documents. You weren't trying to enforce what was contained in the handwritten document, which was very expanded upon in the typed one that was presented to the court. That's correct. Okay. And, Judge, I want to go back. I apologize. I want to make sure that I don't want to misrepresent anything to the court. Here's the course of discussion in front of Judge Lopinoff in 2009 regarding whether or not Mr. Stegmaier had authority to sign. Mr. Stegmaier says the agreement is there and I have full authority. And then he's cut off, it looks like, on the record by Mr. Davenport, who says no. And Mr. Stegmaier continues from Mr. Davenport has asked his attorney to sign that agreement. Furthermore, there is another agreement in there where Mr. Davenport did sign, held by the mediation, so that's part of the agreement. That's the agreement to go to mediation. And then Mr. Davenport testifies, I was told that they would draft up an agreement resolution, and I would be able to view it and sign it the next day. I was walked out of the mediation by Charlie, walked out before they even started in the writing of the agreement. And then this is where the colloquy between the court and Mr. Davenport occurs regarding did you agree to an amount? Did you agree to this amount? And eventually Mr. Davenport concedes that he did, and that was when Judge Lopinoff issued his actual ruling. So the reason I think all of that is so very important is what has already been identified by the court. And that is there's no jurisdiction for the court to even be looking at an agreement from 2009, six years later, more than six months after Mrs. Davenroy died. If Mr. Davenroy Jr. had an issue with the motion, the granting of the motion to enforce the settlement in 2009, he had 30 days to try to change it in the circuit court of St. Clair County. And then he had two years to come here to the 5th District and have that order overruled here. Once those two years went by, he can't go back in time forever and ever. And that's what he's trying to do here is to go back in a very long time, Joe, and try to resurrect arguments that he had then and that he should have made at that point in time. In addition, judges, as I indicated, the appeal is based in large part on saying that I committed fraud against the court back in 2009. However, the allegations, when you look at them, they don't support that conclusion. Well, I guess, really, the state of the law is the only thing that we are allowed to look at, is whether or not the alleged fraud prevented the court from acquiring jurisdiction. That's correct. And, of course, Mr. Davenroy was the plaintiff, so there was nothing I could have done to affect the court's jurisdiction, to affect the court accepting jurisdiction one way or the other. And there was never a jurisdictional argument made in the cases that were concluded in 2009, because one was filed in 2002 and one was filed in 2003. The initial case in 2002 was filed by Mr. Davenroy Jr. against his father's estate, and then he later added his mother to the case in 2008. So, turning then to the court's refusal to allow the fifth petition to be filed by Mr. Davenroy, and this entire litigation over this issue took almost a year of successive petitions being filed, with the fifth one being the last one. Mr. Davenroy wants to cast it as a declaratory judgment, but it's not a declaratory judgment. It's a petition for reformation of the court-ordered and enforced 2009 settlement agreement. It's the subject of the prior argument. And even in the argument here today, and certainly in the written argument, the estate jumps back and forth between saying, no, no, no, it's a petition for declaratory judgment, but we just want the court to reform this prior agreement that's in existence. Of course, the elements for reformation and declaratory judgment are different, and the standards for the two cause of action are different. Declaratory judgment is generally designed to allow for early determination of a dispute. Reformation, on the other hand, is an action to change a written agreement to conform to the intention of the parties and the agreement that is in existence between them. Those are two very different forms of relief, and you can't call reformation a declaratory judgment and make it a declaratory judgment. The timeframe within which the final reformation of an agreement is provided for in Rule 1401, and that is two years, and we are much past that timeframe. Excuse me. Furthermore, the standard of review on the motion to amend is abuse of discretion. And the considerations that the trial court takes into mind when it looks at a party's request to amend a petition is, will the proposed amendment cure the defective pleading? Will the proposed amendment surprise or prejudice? Was the proposed amendment timely filed? And did the moving party have previous opportunities to amend? As I've indicated, this would have been the fifth time that Mr. Davenport, Jr. had sought to file a new petition in this matter. So a number of opportunities were given to him to get it right, to get a cause of action that works before the court. But I believe, although with the order from 2016, it's two lines. The motion to dismiss is granted. The motion to leave the petition to reform a settlement agreement is denied. Not sure what the court's rationale was there, but I believe the court concluded that this petition was going to do no more harm to cure the defectiveness of the arguments by Mr. Davenport, Jr. than any of the four successive ones did. And when the court is looking at this, of course, in total, the court, for the de novo reveal, the court doesn't just look at what is instantly before the court, but can look at any reason that is present in the file to see if the motion to dismiss is supported. We had motions to dismiss pending before the court, both under 2-615 and 2-619. And I believe both would support a finding of dismissal or a judgment of dismissal in this case. Unless the court has any other questions, I have no further argument. I think we're satisfied. Thank you. Thank you. Mr. Thompson, do you have rebuttal? I have just a few points. Your Honor, I hesitate to say it, but I think the misrepresentations to the court are continuing today. Mr. Jacobo said that Al was represented by Attorney Stegmire at that hearing. If you look at my appendix, page 820, you've got the first page of the transcript. Mr. Charles Stegmire, attorney at law, on behalf of Al Davenroy, parentheses, in previous hearings, close parentheses. He was not representing Al at that hearing. Is there an order that is... No, there's no order of withdrawal or dismissal. No order. Page 101 of the appendix, I have the statement from Al. It's a letter to Charlie Stegmire. Also, I have asked for my files for seven times now in over two months. Have not been returned. Please do so immediately. You are jeopardizing my case, which, again, is consistent with the conclusion that he has dismissed Charlie Stegmire. And that's prior to the hearing. Actually, I'm sorry. No, it wasn't. It was 113009. That letter was after the hearing. Page 29 of my appendix. Yeah, 29. It is a motion to set aside settlement agreement filed by Al on October 27th, so prior to the hearing, in paragraph 8. As of the date of the filing of this motion, no communication has been received as to the rejection of mediation settlement or on the self-removal as counsel by C. Stegmire. And that self-removal is, I think, in fact, Al and Charlie argued. Charlie kind of threw Al out. But here's another reference. Prior to the hearing, the Stegmire has been removed, or is removed as Al's counsel. That's my point. And the transcript of the hearing shows, yes, Stegmire previously represented Al, but not in that hearing. If you look at what Stegmire said at the hearing, he certainly didn't support Al. He argued Simon. He agreed to waive claims against Mom's estate, which wasn't his point at all. So if he wasn't representing him, what was he doing, arguing? I don't know. He wasn't representing Al. And I don't know who called him, why he was there. But he argued against Al's position to the court. He said, Al agreed to all of this, when Al passed it. Well, he either argued against his position, or he was stating the facts as he believed them to be. Possibly, yeah. As to the second petition, the petition to reform settlement agreement, I just think the theory of reformation is the basis for the declaration we're asking the court to make. And on page 6 of my reply brief, I cite a case to support the proposition that a petition to reform is a proper matter for a declaratory judgment, just as the petition to construe a contract is a proper matter for a declaratory judgment. So I don't think there's a problem there. And then as to the statute on that, a petition to reform is a contract statute, which is 10 years. It's not a 1401 issue. You have 10 years to reform an agreement. So I'd have until 2019 to bring an action for that. And I think that's all I have. Thank you. Thank you for your briefs and your arguments, both of you, all of you gentlemen. And we'll take the matter under advisement and under a ruling. Thank you. Thank you.